### FARRELL v. CONTINENTAL IRON WORKS.

(District Court, E. D. New York.    June 2, 1900.)

NEGLIGENCE—ACTION FOR PERSONAL INJURY—SUFFICIENCY OF EVIDENCE.

Libelant contracted to carry a cargo of coal on his canal boat, and deliver the same to respondent, as consignee, and to tend the guy while the cargo was being discharged by respondent. While holding the guy rope in the performance of such duty, it came untied from the chain to which it was fastened, and in consequence libelant fell and was injured. The rope had been tied in the morning by an employé of respondent, but the knot was examined by libelant, who was competent to judge of its sufficiency, and he testified that it was sufficient and could not have come untied. *Held*, that he assumed the risk of its sufficiency, and could not recover on the ground of the negligence of respondent's servants; the preponderance of evidence showing that none of such servants had disturbed the knot since it was first tied.

In Admiralty.    Suit to recover for personal injury on the ground of negligence.

Martin A. Ryan, for libelant.
Lamb & Johnson, for respondent.

THOMAS, District Judge.    The libelant, who was the owner and captain of the canal boat Lizzie Farrell, entered into a contract with Coxe Bros. & Co., whereby the libelant agreed to carry on his boat certain coal from Perth Amboy, N. J., and deliver the same to the Continental Iron Works, the respondent, and receive therefor the sum of 20 cents per ton alongside; and the libelant also agreed to tend the guy during the discharge of the boat.    For the purpose of tending the guy, the libelant stood on one side of his vessel and held a rope, which from his hands ran to and fastened to the chain connecting the bucket with the fall.    Some person, who seems to have been connected with the drawing away of the coal, tied the guy rope to the ring in the chain, in the presence of the libelant, and the latter tended the guy rope thus fastened from about 7 in the morning until 12 noon.    After an interval of an hour he resumed his work, and continued until about half past 3 o'clock, at which time the end of the rope fastened through the ring became untied, causing the libelant to lose his balance and fall back upon a load of coal in a canal boat behind him, and receive the injuries which are the subject of the present action.

In whatever legal relation the libelant stood to the respondent, the same degree of care was required of the latter, and the question is whether such care was exercised.    The libelant testifies that before starting work in the morning he noticed how the guy rope was fastened; that there were 12 or 14 inches hanging over on the short end, and that, as long as it was fastened as he found it in the morning, it was impossible for it to become untied; that the reason he did not notice it in the afternoon was because he thought it was the same fastening as in the morning.    The evidence of the libelant is explicit that he knew what the tie was in the morning, and that it was suffi-

cient. Therefore, by whosesoever hand it was made, it must be concluded that the respondent, or somebody acting in its behalf, had exercised the reasonable care required to secure the safety of the libelant, so far as the manner of fastening the guy rope was concerned. The result shows that the tie was not secure, but the libelant had opportunity to see, and did see. He had the knowledge of an expert, which capacitated him to pass upon the sufficiency of the knot, and he did pass judgment upon it. The respondent was not an insurer, nor bound to the highest care in adjusting the knot, and the judgment of the libelant is conclusive evidence that the respondent used the care imposed upon it. If there was risk, the libelant had an opportunity to know what it was, and, whatever it was, he assumed it. But the libelant urges that the fastening of the morning was not the fastening of the afternoon. He states that he thought it was the same. Therefore to his eye there had been no change. It appears that at the noon hour the fall was changed, by the rope of which it consisted being renewed in whole or in part. But, whatever was done, it was not necessary to untie the guy rope. Nor is it apparent what useful purpose would have been effected by untying it. But the several persons connected with the replacing or repairing of the fall stated that the guy rope was not interfered with, so far as they severally knew. But a witness produced by the libelant states that he saw a certain servant of the respondent tie the guy rope on before the beginning of the work in the afternoon after the replacing of the fall, and that two other persons named were then present. That servant and such person, being produced, said that the servant did not tie the guy at such time, but that he did tie it after it gave way in the afternoon, and after the libelant was hurt. The force of the evidence against the libelant is at least as strong, and, it is thought, stronger than that in his favor, in this regard; and the conclusion must be reached that the guy rope was tied only in the morning, and that such tie was satisfactory to the libelant, who is himself expert in such matters. The burden of proof is upon the libelant, inasmuch as the mere untying of the rope after several hours of use would not of itself raise a presumption of negligence. It is true that the libelant states that the tie in the morning could not become loosed, and that therefore the guy rope must have been taken off at the noon hour. That is the libelant's opinion, and should be held of considerable value, but it cannot outweigh the fact which the preponderance of evidence establishes. The libel should be dismissed, with costs.